1  Guy B. Wallace, State Bar No. 176151
2  Elisa P. Laird, State Bar No. 192214
   SCHNEIDER & WALLACE
3  180 Montgomery Street, Suite 2000
   San Francisco, CA 94104
4  Telephone: (415) 421-7100
   Facsimile: (415) 421-7105

7  Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA



| | |
|---|---|
| MARGIE CHERRY and ESTORIA CHERRY, on behalf of themselves and all others similarly situated;<br><br>Plaintiffs,<br><br>vs.<br><br>THE CITY COLLEGE OF SAN FRANCISCO ("City College"); LAWRENCE WONG, in his official capacity as President of the Board of Trustees; MILTON MARKS, III, in his official capacity as Vice-President of the Board of Trustees; DR. NATALIE BERG, JOHNNIE CARTER, JR., DR. ANITA GRIER, JULIO J. RAMOS, RODEL E. RODIS, in their official capacities as members of the Board of Trustees; and DR. PHILIP R. RAY, JR., in his official capacity as Chancellor;<br><br>Defendants. | No. C 04-4981<br>CLASS ACTION<br><br>PLAINTIFFS' COMPLAINT FOR DISCRIMINATION AGAINST PERSONS WITH DISABILITIES: THE AMERICANS WITH DISABILITIES ACT OF 1990; SECTION 504 OF THE REHABILITATION ACT OF 1973; AND 42 U.S.C. SECTION 1983 |

# INTRODUCTION

1. This action seeks to redress CITY COLLEGE COLLEGE OF SAN FRANCISCO's ("City College") failure to provide to persons with disabilities the minimum legally required access to the facilities, programs, services and activities owned, operated, controlled, provided and/or maintained by CITY COLLEGE. The Plaintiffs in this action have suffered ongoing deprivations of their civil rights, educational opportunities, and equal access to CITY COLLEGE's facilities, programs, services, and activities because of CITY COLLEGE's repeated violations of federal law regarding access for persons with mobility disabilities. The facilities owned, operated, or controlled by CITY COLLEGE are characterized by multiple, pervasive, and hazardous architectural barriers. CITY COLLEGE's architectural barriers include, *inter alia*, dangerous and inaccessible sidewalks, inaccessible buildings, inaccessible paths of travel within and between buildings, inaccessible or nonexistent parking for persons with disabilities, inaccessible classrooms, inaccessible doorways within buildings, inaccessible desks for students, inadequate signage and excessive door pressures in buildings, inaccessible or non-operational elevators within buildings, and inaccessible or inadequate restrooms within buildings. Many of these barriers constitute safety hazards to persons who have mobility disabilities.

2. CITY COLLEGE has known for over twenty-five years that it was required by Section 504 of the Rehabilitation Act of 1973 and its accompanying regulations to address its unequal facilities in the form of a Self-Evaluation Plan and a Transition Plan, in which CITY COLLEGE identified all facilities, programs, services, and activities that deny or limit equal access to persons with disabilities. CITY COLLEGE has also known for twenty years that it was required by Section 504 of the Rehabilitation Act of 1973 to have implemented structural changes to create equal access to the facilities owned, operated, controlled and/or maintained by CITY COLLEGE. In addition, CITY COLLEGE has known that it was required under Title II of the Americans with Disabilities Act of 1990 ("ADA") to implement structural changes to create equal access to its facilities by no later than January 26, 1995. CITY COLLEGE has failed to meet these federal requirements, failed to develop adequate plans, and has denied equal access to persons with physical disabilities. The Chancellor of CITY COLLEGE and the members of CITY COLLEGE's

SCHNEIDER & WALLACE

COMPLAINT, CHERRY V. CITY COLLEGE OF SAN FRANCISCO, ET AL.

1

Board of Supervisors are each responsible for ensuring compliance with federal law by CITY COLLEGE's various facilities, programs, services, and activities. Despite the obligation of the Chancellor and the Board to ensure that CITY COLLEGE complies fully with federal disability non-discrimination law, they have failed and refused to ensure such compliance.

3. CITY COLLEGE has in many instances refused to make even the most minimal accommodations and structural modifications to make its programs and facilities accessible to persons with disabilities. In addition, despite repeated requests by Plaintiffs MARGIE and ESTORIA CHERRY, CITY COLLEGE has, among other things: (a) failed to provide accessible classroom facilities; (b) failed to provide accessible restrooms in many of its facilities; (c) failed to ensure that its ramps and paths of travel comply with the maximum slope requirements of state and federal design codes, and that they do not constitute safety hazards to students with mobility impairments; (d) failed to remove barriers that constitute safety hazards to persons with disabilities; and (e) failed to ensure that access features such as elevators and wheelchair lifts are operational so that persons with disabilities are not routinely denied access to CITY COLLEGE's facilities.

4. This action is brought on behalf of students and individuals who because of their physical disabilities have been repeatedly denied access to the programs, facilities, services, and activities of CITY COLLEGE which are routinely made available to non-disabled students and individuals.

5. The Plaintiffs seek declaratory and injunctive relief as well as damages against the Defendants for severely limiting Plaintiffs' access to CITY COLLEGE's programs, facilities, services, and activities by knowingly refusing to eliminate architectural and programmatic barriers, resulting in emotional and physical distress to Plaintiffs and violating Title II of the Americans With Disabilities Act, 42 U.S.C. §12101 *et seq.*, and its accompanying regulations; Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §794, and its accompanying regulations; and 42 U.S.C. §1983.

6. Plaintiffs have no adequate remedy at law and unless the Defendants are preliminarily and permanently enjoined, Plaintiffs will continue to suffer irreparable harm as a result of their exclusion from basic programs, facilities, services, and activities.

## JURISDICTION

7. This Court has subject matter jurisdiction of this action pursuant to Title II of the Americans With Disabilities Act of 1990, 42 U.S.C. §12101 *et seq.*, and its accompanying regulations; Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §794, and its accompanying regulations; and 42 U.S.C. §1983.

## VENUE

8. Venue is proper in the Northern District of California, the judicial district in which these claims have arisen, pursuant to 28 U.S.C. §1391(b).

## INTRADISTRICT ASSIGNMENT

9. Assignment of this action to the United States District Court for the Northern District of California, San Francisco/Oakland, is proper pursuant to Civil L.R. 3-2 because these civil claims arose in the County of San Francisco, within this District.

## THE PARTIES

10. Plaintiffs MARGIE CHERRY and ESTORIA CHERRY are persons with mobility disabilities within the meaning of all applicable statutes, and they are qualified persons with disabilities within the meaning of Title II of the ADA and Section 504 of the Rehabilitation Act. Plaintiff ESTORIA CHERRY has cerebral palsy and uses a walker at all times for mobility. She requires assistance when walking on uneven surfaces, such as broken sidewalks or unpaved paths. If she will be walking for long distances she uses a wheelchair for mobility. At school, Plaintiff ESTORIA CHERRY needs help opening doors because the doors are too heavy for her to open by herself. She also requires help carrying her books, as it is difficult for her to manage carrying heavy books while she is using her walker. Plaintiff MARGIE CHERRY has rheumatoid arthritis in many of her joints, including her knees, and has compressed discs in her back, due to an automobile accident. She also suffers from sciatica. As a result of her disabilities, she cannot stand or walk long distances and has extreme difficulty with stairs. Plaintiff MARGIE CHERRY

always prefers to use a ramp or elevator instead of using stairs. When she must use stairs, she needs to hold the handrail at all times. She has used a walker in the past and has been given a disabled parking placard by the State of California. She have experienced all of the same access barriers at CITY COLLEGE that her daughter, Plaintiff ESTORIA CHERRY, has experienced. Plaintiffs MARGIE CHERRY and ESTORIA CHERRY confront numerous physical barriers on a daily basis at CITY COLLEGE, which have severely limited or denied their use and enjoyment of the programs, facilities, services, and activities provided by CITY COLLEGE to non-disabled individuals. Plaintiffs MARGIE CHERRY and ESTORIA CHERRY are residents of the City and County of San Francisco and are citizens of the State of California and the United States.

11.  CITY COLLEGE is a local government entity, with responsibility for providing Plaintiffs with access to its programs, facilities, services, and activities.

12.  DR. PHILIP R. DAY, JR. is the Chancellor of CITY COLLEGE (hereinafter the "Chancellor"); LAWRENCE WONG is the President of the Board of Trustees; MILTON MARKS, III is the Vice-President of the Board of Trustees; DR. NATALIE BERG, JOHNNIE CARTER, JR., DR. ANITA GRIER, JULIO J. RAMOS, and RODEL E. RODIS are members of the Board of Trustees (hereinafter the "Board"). The Chancellor and the Board are each legally responsible for ensuring compliance with federal law by CITY COLLEGE.

13.  CITY COLLEGE, the Chancellor and the Board will be collectively referred to as "Defendants."

## CLASS ALLEGATIONS

14.  Plaintiffs MARGIE CHERRY and ESTORIA CHERRY bring this action on behalf of themselves and all persons similarly situated. The class that Plaintiffs represent is composed of all persons with mobility disabilities who have been denied the right to full and equal access to, and use and enjoyment of, the facilities, programs, services, and activities provided by CITY COLLEGE because of the disabled-access violations described herein.

15.  The persons in the class are so numerous that joinder of all such persons is impracticable and the disposition of their claims in a class action is a benefit both to the parties and to this Court.

COMPLAINT, CHERRY V. CITY COLLEGE OF SAN FRANCISCO, ET AL.

4

SCHNEIDER & WALLACE

16. There is a well-defined community of interest in the questions of law and fact regarding the parties to be represented in that they were all denied their civil rights to full and equal access to, and use and enjoyment of, the facilities and programs operated by the Defendants because of lack of access required for disabled persons.

17. There are numerous common questions of law and fact.

18. The claims of Plaintiffs MARGIE CHERRY and ESTORIA CHERRY are typical of those of the class, and Plaintiffs MARGIE CHERRY and ESTORIA CHERRY will fairly and adequately represent the interests of the class.

19. References to Plaintiffs shall be deemed to include the named Plaintiffs and each member of the class. Counsel who represent Plaintiffs and the Class are competent and experienced in litigating complex class actions, including large-scale disability rights class action cases.

## FACTUAL ALLEGATIONS

### (Applicable to All Claims)

20. CITY COLLEGE receives federal funds for its programs. CITY COLLEGE has numerous illegal physical and programmatic barriers to students, visitors, and other individuals who use wheelchairs and/or who have mobility disabilities. Among the examples of how the premises, facilities, programs, services, and activities of CITY COLLEGE present architectural and programmatic barriers to Plaintiffs are the following:

   a. None of the various campuses of CITY COLLEGE are fully accessible. CITY COLLEGE buildings and essential parts of buildings are inaccessible to persons with mobility disabilities;

   b. Classrooms and essential parts of classrooms are inaccessible to persons with mobility disabilities;

   c. Special purpose classrooms, such as science laboratories, do not contain workstations and other facilities that are accessible to students with disabilities and cannot be used by them safely;

   d. Athletic facilities are not accessible to persons with mobility disabilities;

e. Special purpose educational facilities, such as school libraries, are not accessible to persons with mobility disabilities;

f. Many sidewalks on the campuses of CITY COLLEGE are inaccessible to persons with mobility disabilities;

g. The campuses of CITY COLLEGE include many paths of travel which are inaccessible or hazardous to persons with mobility disabilities;

h. The classrooms of CITY COLLEGE are inaccessible to persons with mobility disabilities;

i. The paths of travel within many buildings on the campuses of CITY COLLEGE are inaccessible or hazardous to persons with mobility disabilities;

j. Many restrooms on the campuses of CITY COLLEGE are either completely inaccessible or contain severe obstacles to use by persons with mobility disabilities;

k. Many ramps on the campuses of CITY COLLEGE are too long, too steep, or in such a condition as to be inaccessible or hazardous to persons with mobility disabilities. In addition, many ramps do not provide handrails for persons with mobility disabilities as mandated by state and federal accessible design standards;

l. Many of the building entrances on the campuses of CITY COLLEGE for students and other individuals with disabilities are completely separate and segregated from those used by non-disabled individuals;

m. Many of the elevators in buildings on the campus of CITY COLLEGE are not kept in operating condition. Students, parents, and other individuals with disabilities who use CITY COLLEGE and its facilities, programs, services, and activities have been subjected to denial of access to programs and facilities because of routine elevator breakdowns;

  n. The paths of travel offered for persons with mobility disabilities on the campuses of CITY COLLEGE are sometimes extremely lengthy or circuitous, causing persons with mobility disabilities to miss classes and other events;

  o. At various locations throughout CITY COLLEGE's facilities, Defendants have failed to provide and maintain adequate signage for access features for persons with mobility disabilities;

  p. Many of the facilities on the campuses of CITY COLLEGE have inadequate or inaccessible parking for persons with mobility disabilities;

  q. Because of the architectural and programmatic barriers faced by persons with mobility disabilities, many are unable to attend their classes on time or at all, causing their grades to suffer;

  r. Defendants have not communicated to persons with mobility disabilities any definitive plan for evacuating them from its buildings in the event of a fire, earthquake, or other emergency;

  s. At various locations throughout CITY COLLEGE's facilities, telephones, water fountains, mirrors, and light switches are inaccessible to persons with mobility disabilities;

  t. At various locations throughout CITY COLLEGE's facilities, Defendants have failed to provide and maintain proper door hardware, door-opening width, and door-opening force for persons with disabilities;

21. Because of the Defendants' misconduct and failure to remove architectural and programmatic access barriers, Plaintiffs have been denied full and equal access to CITY COLLEGE's programs, facilities, services, and activities. Plaintiffs have suffered and risk suffering severe physical injury and damage to their self-esteem, academic performance and professional development because Defendants have failed and refused to ensure that CITY COLLEGE complies with federal disability anti-discrimination law, including CITY COLLEGE's failure to remove illegal and hazardous architectural and programmatic barriers.

22. Plaintiffs are informed and believe, and on that basis allege, that the overwhelming majority of buildings operated and administered by Defendants contain multiple, severe, and illegal architectural barriers. These barriers include, but are not limited to, inaccessible restrooms, inaccessible floors, inaccessible programs, absence of ramps, dangerous and steep ramps, failure to provide and maintain accessible elevators that do not constitute safety hazards to persons with disabilities, failure to provide and maintain a sufficient number of fully accessible parking spaces, and numerous other obstacles. Plaintiffs are informed and believe, and on that basis allege, that CITY COLLEGE provides inadequate assistance and services to its disabled students, and has not adapted its classes and programs to account for the difficulties encountered by students with mobility disabilities to avoid harm to those students' academic performance and professional development.

23. The preceding examples of architectural and programmatic barriers that deny students, visitors, and other individuals with disabilities full and equal access to, and use and enjoyment of, the facilities and programs of CITY COLLEGE, are illustrative and not exhaustive. Plaintiffs are informed and believe, and on that basis allege, that the Defendants have deliberately established and continue to practice a pervasive, long-standing, multi-faceted policy and practice of illegally maintaining campuses that are not accessible to persons with mobility disabilities.

24. Defendants have known for years that they are operating illegal facilities and programs, which, by reason of multiple and severe architectural barriers, discriminate against students and other persons with mobility disabilities, but have intentionally refused to comply with federal disability non-discrimination law.

25. The Chancellor and the Members of the Board of Trustees are legally responsible for failing to ensure CITY COLLEGE's full compliance with federal law, as alleged in this Complaint.

26. Plaintiff ESTORIA CHERRY has a physical disability and uses a walker or a wheelchair for mobility. During the past two years, she has attended classes at CITY COLLEGE's Ocean Avenue campus. Plaintiff ESTORIA CHERRY has been repeatedly and routinely denied full and equal access to CITY COLLEGE's facilities, programs, services, and activities because of

the Defendants' refusal and failure to provide the legally required access to CITY COLLEGE. During her entire time at CITY COLLEGE, Plaintiff ESTORIA CHERRY has never attended a fully accessible campus.

27. During the past year, Plaintiff ESTORIA CHERRY has missed numerous classes or been late to class because of inoperable elevators, the absence of accessible routes of travel, the length and difficulty of the only paths of travel provided to her, inadequate or inaccessible restrooms, and inadequate or inaccessible parking.

28. Plaintiff ESTORIA CHERRY often must wait hours for an accessible parking space to become available, thus making her late to classes and other events. For example, Plaintiff ESTORIA CHERRY attends a tutorial in the Library of the Ocean Avenue Campus. Often, it takes Plaintiff ESTORIA CHERRY over an hour to find an accessible parking space, and on many occasions she has missed all or part of her tutorial because of this lack of accessible parking.

29. Plaintiff ESTORIA CHERRY has extreme difficulty fitting herself and her walker through the doors of many of CITY COLLEGE's classrooms. Once inside a classroom, Plaintiff ESTORIA CHERRY has routinely been denied an accessible desk. Because of the lack of an accessible path of travel within the classroom, she can only sit close to the door. In some instances, she is forced to sit in the doorway.

30. As a direct result of Defendants' systemic failure to provide and maintain accessible paths of travel, working elevators, and adequate and accessible parking for students with mobility disabilities, Plaintiff ESTORIA CHERRY has been late to or has missed many classes and other events. As a result of the inaccessibility of CITY COLLEGE, her self-esteem, academic performance and professional development have been severely damaged.

31. The routes of travel that accommodate persons with mobility disabilities at CITY COLLEGE are not protected from the elements; because Plaintiff ESTORIA CHERRY is unable to hold an umbrella while using her walker or a wheelchair, she is completely exposed to the rain. Futher, the rainy conditions make the steep and hazardous paths of travel at CITY COLLEGE far more difficult and dangerous to negotiate. Such circumstances and conditions are particularly

unsafe for Plaintiff ESTORIA CHERRY because her disability includes difficulty keeping her balance, and it is easy for her to suffer falls.

32. Defendants have not instituted a plan whereby Plaintiff ESTORIA CHERRY's teachers and instructors are aware of the difficulties Plaintiff ESTORIA CHERRY faces in moving between classes, parking in accessible spaces, and using the restroom, among other things. Defendants have failed to provide Plaintiff ESTORIA CHERRY with a course schedule that minimizes the distance that she must travel on campus and between classes, and have failed to provide the requisite assistance to her to use campus classrooms and facilities effectively. As a result, Plaintiff ESTORIA CHERRY's academic performance has suffered. In her three semesters at CITY COLLEGE, Plaintiff ESTORIA CHERRY has yet to receive credit for her coursework.

33. Plaintiff ESTORIA CHERRY has suffered as a result of inadequate assistance and services from CITY COLLEGE's Disabled Students Programs & Services department ("DSPS"). At one point, Plaintiff ESTORIA CHERRY was erroneously directed by DSPS to a campus for remedial, pre-college level classes. This campus was not accessible, and Plaintiff ESTORIA CHERRY wasted an entire semester taking classes that did not provide her with college credit.

34. Plaintiff MARGIE CHERRY has a physical disability and walks with difficulty. During the past two years, she has accompanied ESTORIA CHERRY to CITY COLLEGE's Ocean Avenue campus on numerous occasions. Plaintiff MARGIE CHERRY has been repeatedly and routinely denied full and equal access to CITY COLLEGE's facilities, programs, services, and activities because of the Defendants' refusal and failure to provide the legally required access to CITY COLLEGE.

35. The difficulties and barriers encountered by Plaintiff ESTORIA CHERRY, including inaccessible buildings, inoperable elevators, dangerous or inaccessible paths of travel, inadequate or inaccessible parking, and lengthy and circuitous routes of travel provided to persons with mobility disabilities, are experienced by Plaintiff MARGIE CHERRY as well.

36. Plaintiff MARGIE CHERRY has been a resident of San Francisco for 62 years, and a resident of the Bayview District for 25 years. Plaintiff MARGIE CHERRY is involved with extensive community work in her neighborhood and the city of San Francisco. She volunteers

SCHNEIDER
& WALLACE

COMPLAINT, CHERRY V. CITY COLLEGE OF SAN FRANCISCO, ET AL.

10

with the Community Court team for the Bayview/Hunter's Point District, which is part of the San Francisco Court system, in connection with the District Attorney's Office. She is on the Board of Directors for the Health and Environmental Resource Center, a non-profit organization which deals with health issues affecting Bayview Hunter's Point residents. She is president of the Margie Cherry Complimentary Breast Health Center and worked for the Black Coalition on AIDS as the Faith-Based Health Coordinator. She is on the Board of Directors for the Frandelja Child Development Center, and she works in her church as the Vice President of the Young Women's Christian Council, President of the Health Ministry, member of the Church Hospitality Guild, and she serves on the Board of Trustees for her church.

37. Plaintiff MARGIE CHERRY attends Community Court meetings on the Evans Street campus of CITY COLLEGE. The building that houses the Community Court contains no elevator, preventing persons with mobility disabilities from accessing any floor but the ground floor.

38. Plaintiff MARGIE CHERRY also volunteers at the Southeast campus of CITY COLLEGE, located at Oakdale & Phelps Streets. Many of the access barriers experienced by Plaintiffs ESTORIA CHERRY and MARGIE CHERRY at the Ocean Avenue campus exist at the Southeast campus as well. The parking lots lack accessible spaces with aisles and proper signage. Interior stairways lack contrast striping and adequate signage. Many doors lack the proper clearance and width. There are access barriers with respect to the elevator, classrooms, drinking fountains, and telephones.

39. The Creative Arts Building on the Ocean Avenue campus of CITY COLLEGE contains a mural painted by famed artist Diego Rivera. Unfortunately, the entrance to the building is inaccessible to persons with mobility disabilities, preventing persons with disabilities from experiencing this unique part of CITY COLLEGE's collection.

40. The Administrative Offices of CITY COLLEGE have numerous building-wide accessibility barriers. Curb ramps lack required width, slip-resistant finish, and contrasting. The parking lots lack accessible spaces with aisles and proper signage. Stairways and ramps have handrail, striping, and signage barriers. The elevators have inaccessible features. Restrooms lack

COMPLAINT, CHERRY V. CITY COLLEGE OF SAN FRANCISCO, ET AL.

11

SCHNEIDER & WALLACE

sufficient entrance clearance, and have inaccessible stalls, hardware, and features. Additionally, there are numerous door, drinking fountain, telephone, clearance, and signage barriers.

41.   The John Adams Campus of CITY COLLEGE has numerous accessibility barriers campus-wide. There are no accessible parking spaces with proper signage in either parking lot. There are many door barriers, including, but not limited to, inaccessible lever handles, narrow doors lacking the requisite clearance width, threshold height, and hardware. The auditorium is inaccessible. The fire escapes lack guardrails and striping. There are inaccessible classrooms on the first floor because interior stairways and ramps include handrail, contrast striping, and signage barriers. Additionally, many other restroom, clearance, signage, and drinking fountain barriers exist.

42.   The Downtown Campus of CITY COLLEGE is largely inaccessible. Many stairways lack adequate handrails, contrast striping, and signage. Doors lack lever handles, required door clearance and width, and required threshold height. The elevators have inaccessible features. Restrooms lack sufficient entrance clearance, and have inaccessible stalls, hardware, and features. Additionally, the library, many classrooms, and drinking fountains are inaccessible.

43.   The Mission Campus of CITY COLLEGE contains no accessible parking spaces with proper signage in either parking lot. Door barriers such as inadequate lever handles, door width, threshold height, hardware, and door access are widespread throughout the campus. The stairways lack adequate handrails, contrast striping, and signage. The elevator is inaccessible because it is locked and not available for public use.

44.   The Alemany Campus of CITY COLLEGE has numerous accessibility barriers. There are no accessible parking spaces or elevators within the Alemany Campus. Doors at various locations throughout the campus are inaccessible because of the lack of lever handles and narrow door widths. The types of barriers within the restrooms include, but are not limited to, inaccessible stalls and urinals. Additionally, numerous areas lack adequate clearance, signage, and areas of rescue assistance. Many drinking fountains are inaccessible.

45.   The Chinatown/North Beach Campus of CITY COLLEGE is inaccessible. There are no elevators in the building and the administrative and program-related functions are all located on

SCHNEIDER & WALLACE

the second floor. Many classrooms are inaccessible because wheelchair seating is not provided. The parking lots are inaccessible and there is no accessible path of travel into the building. The stairways do not include striping, signage, or hand-railing extensions. Many areas on the campus lack adequate clearance, and many doors, restrooms, drinking fountains, telephones, and areas of rescue assistance are inaccessible.

46. At the Airport Campus of CITY COLLEGE, curb ramps lack required slope, flared sides with grooved border and detectable warnings. The parking lots lack accessible spaces with aisles, curb ramps, and proper signage. Door barriers include a lack of lever handles, required strike-side clearance, and proper threshold and bottom panel heights. Restrooms lack sufficient entrance clearance, and have inaccessible stalls, hardware, and other features.

**FIRST CLAIM**
**Violations of the Americans with Disabilities Act of 1990**
**(Against all Defendants)**

47. Plaintiffs incorporate by reference as though fully set forth herein paragraphs 1 through 46 of this Complaint.

48. The acts alleged herein constitute violations of Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §12131 *et seq.*, and the regulations promulgated thereunder. Title II of the ADA provides, *inter alia*, that (a) people with disabilities shall not be excluded from participation in, nor be denied the benefits of any services, programs, or activities of a public entity, or be subjected to discrimination by any such entity; (b) a public entity may not provide a qualified person with a disability any aid, benefit, or service that is inferior to that received by non-disabled persons; (c) public entities and recipients of federal monies that employ fifteen or more persons shall adopt and complete implementation of an effective transition plan no later than January 26, 1995.

49. CITY COLLEGE has employed, and continues to employ, more than fifteen people.

50. Defendants' discriminatory conduct alleged herein constitutes, *inter alia*, (a) failure to provide safe and equal access to CITY COLLEGE's programs, facilities, services, and activities; (b) denial of access to CITY COLLEGE's programs, facilities, services, and activities; (c) failure to formulate and implement an adequate self-evaluation and transition plan (including failure to

develop an evacuation plan for students with disabilities in the event of fire or earthquake); and (d) failure to take prompt and equitable steps to remedy its discriminatory conduct.

51. The premises administered by Defendants include buildings, structures, and related facilities within the meaning of the Americans with Disabilities Act Accessibility Guidelines ("ADAAG") and the Uniform Federal Access Standards ("UFAS"). Plaintiffs are informed and believe, and on that basis allege, that since January 26, 1992, Defendants have constructed, altered, or repaired parts of these premises within the meaning of the ADAAG and the UFAS, and that Defendants have failed and refused to provide access as required under federal accessibility standards. In addition, Defendants have failed to provide students and other individuals with mobility disabilities with a map of its accessible facilities and paths of travel.

52. Defendants have failed and refused to comply with the obligations stated in its ADA self-evaluation and transition plans.

53. Pursuant to 42 U.S.C. §12133 and the remedies, procedures, and rights set forth in §794 of Title 29 incorporated therein, Plaintiffs pray for judgment as set forth below.

## SECOND CLAIM
### Violations of Section 504 of the Rehabilitation Act of 1973
### (Against All Defendants)

54. Plaintiffs incorporate by reference as though fully set forth herein paragraphs 1 through 53 of this Complaint.

55. The acts alleged herein constitute violations of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 *et seq.*, and the regulations promulgated thereunder. Section 504 of the Rehabilitation Act provides, *inter alia*, that no otherwise qualified individual with a disability shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance.

56. CITY COLLEGE is a direct recipient of federal financial assistance sufficient to invoke the coverage of Section 504, and has received such federal financial assistance at all times relevant to the claims asserted in this Complaint.

57.     By Defendants' actions or inactions in: (1) denying Plaintiffs their right to full, equal, and safe access to the programs, facilities, services, and activities offered by CITY COLLEGE; (2) failing to develop and implement an adequate self-evaluation and transition plan that sets forth the steps necessary to achieve full and equally effective access for persons with disabilities; and (3) by otherwise discriminating against the Plaintiffs solely by reason of their disabilities, the Defendants have violated Plaintiffs' rights under Section 504 of the Rehabilitation Act of 1973 and the regulations promulgated thereunder.

58.     The premises administered by Defendants include buildings, structures, and related facilities within the meaning of the Americans with Disabilities Act Accessibility Guidelines (ADAAG) and the Uniform Federal Access Standards (UFAS). Plaintiffs are informed and believe, and on that basis allege, that since May 4, 1977, Defendants have constructed, altered or repaired parts of these premises within the meaning of the ADAAG, the UFAS, and applicable federal disability access design standards, and that the Defendants have failed and refused to provide access as required under federal accessibility standards.

59.     Plaintiffs have no adequate remedy at law and unless the relief requested herein is granted, Plaintiffs will suffer irreparable harm by the deprivation of access to the programs, facilities, services, and activities offered by CITY COLLEGE.

### THIRD CLAIM
### 42 U.S.C. §1983
**(Against the Chancellor and the Members of the Board in their Official Capacities)**

60.     Plaintiffs incorporate by reference as though fully set forth herein paragraphs 1 through 59 of this Complaint.

61.     The acts and omissions of the Chancellor and Members of the Board of Trustees, under color of law as well as official policy and custom, as hereinabove set forth, have deprived Plaintiffs of their rights under Title II of the ADA and Section 504 of the Rehabilitation Act of 1973 in violation of 42 U.S.C. §1983, for which Plaintiffs seek and are entitled to injunctive and declaratory relief.

62.     The acts of Defendants as herein alleged were willful, intentional, and oppressive.

63. Plaintiffs have no adequate remedy at law and unless the relief requested herein is granted, Plaintiffs will suffer irreparable harm by the deprivation of their rights under federal law.

**FOURTH CLAIM**
**Declaratory Relief**
**(Against All Defendants)**

64. Plaintiffs incorporate the foregoing paragraphs by reference.

65. A present and actual controversy exists regarding the respective rights and obligations of Plaintiffs and Defendants. Plaintiffs desire a judicial determination of their rights and Defendants' obligations in a declaration as to whether, and to what extent, the Defendants' conduct violates applicable law.

66. Such a declaration is necessary and appropriate at this time in order that Plaintiffs may ascertain their rights. Such a declaration is also necessary and appropriate to prevent further harm or infringement of Plaintiffs' rights.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that this Court:

1. Issue a declaratory judgment that Defendants' failure to provide full, equal, and safe access for Plaintiffs to the programs, facilities, services, and activities that Defendants offer to non-disabled persons violates the Plaintiffs' rights under Title II of the ADA, 42 U.S.C. §12131 *et seq.*, and the regulations promulgated thereunder, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794, and the regulations promulgated thereunder;

2. Issue a declaratory decree that the ongoing acts and omissions of the Chancellor and the Members of the Board of Trustees are taken under color of law, policy or custom, and deprive Plaintiffs of rights secured under Title II of the ADA and Section 504 of the Rehabilitation Act;

3. Issue preliminary and permanent injunctions enjoining the Defendants, and each of them, immediately to develop plans and implement all actions necessary to bring CITY COLLEGE into full compliance with the requirements of Title II of the ADA, Section 504 of the Rehabilitation Act, and the regulations promulgated under each of these Acts. At a minimum, the Defendants should be enjoined to take the following actions:

SCHNEIDER & WALLACE

COMPLAINT, CHERRY V. CITY COLLEGE OF SAN FRANCISCO, ET AL.

  a. Prepare, adopt, and fully implement an ADA Self-Evaluation Plan and ADA Transition Plan which fully complies with the requirements of Title II of the ADA, Section 504 of the Rehabilitation Act, and the regulations promulgated under each of these statutes;

  b. Develop and implement plans to ensure that, where necessary, existing CITY COLLEGE facilities comply with ADAAG standards including, without limitation, removal of all architectural barriers that pose safety hazards to individuals with disabilities; and

  c. Develop and implement plans to ensure that all new construction and alterations to CITY COLLEGE facilities comply with ADAAG standards.

4. Issue preliminary and permanent injunctions requiring the Defendants, and each of them, to undertake remedial measures to mitigate the effects of Defendants' past and ongoing violations of Title II of the ADA, Section 504 of the Rehabilitation Act, and the regulations promulgated under each of these statutes;

5. Grant an order awarding Plaintiffs actual damages for violations of their civil rights;

6. Grant an order awarding Plaintiffs compensatory damages for violations of their civil rights; and

7. Award to Plaintiffs all costs of this proceeding including reasonable attorneys' fees and costs as provided by law, and grant such other and further relief as this Court may deem just and proper.

DATED: November 22, 2004   SCHNEIDER & WALLACE

_____
GUY B. WALLACE
Attorneys for Plaintiffs