United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGIE CHERRY and ESTORIA CHERRY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY COLLEGE OF SAN FRANCISCO ("City College") LAWRENCE WONG, in his official capacity as President of the Board of Trustees, MILTON MARKS, III, in his official capacity as Vice-President of the Board of Trustees, DR. NATALIE BERG, JOHNNIE CARTER, JR., DR. ANITA GRIER, JULIO J. RAMOS, RODEL E. RODIS, in their official capacities as members of the Board of Trustees, and DR. PHILIP R. RAY, JR., in his official capacity as Chancellor,<br><br>Defendants. | No. C 04-04981 WHA<br><br>**ORDER (1) GRANTING-IN-PART AND DENYING-IN-PART CLASS CERTIFICATION AND (2) DENYING MOTION TO COMPEL PRODUCTION OF POTENTIAL CLASS LIST** |

**INTRODUCTION**

In this action alleging violations of Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. 12101 *et seq.*, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794, and 42 U.S.C. 1983, plaintiffs have moved for class certification pursuant to FRCP 23. Plaintiffs have satisfied the requirements of FRCP 23(a) and 23(b)(2), but only with respect to some issues and only with respect to the proposed student class. Accordingly, plaintiffs' motion is **GRANTED-IN-PART AND DENIED-IN-PART**. Plaintiffs' motion to compel production of a list of putative class members, however, is **DENIED** at this time.

## STATEMENT

Plaintiffs allege that the City College of San Francisco has failed to remedy numerous architectural and physical barriers, which render its nine campuses inaccessible to persons with mobility disabilities in violation of the Uniform Federal Accessibility Standards (UFAS) and the Americans with Disabilities Act Accessibility Guidelines for Buildings and Facilities (ADAAG) (see generally Dostert Decl. & Margen Decl.). Specifically, plaintiffs seek injunctive relief requiring City College to become fully compliant with Title II of the ADA and Section 504 by adopting and implemented an adequate self-evaluation and transition plan, including removal of these physical barriers, as necessary, to ensure that its programs, services and activities are accessible.

In this motion, plaintiffs seek certification of two classes consisting of:

(1) All students disabled by mobility impairments who since November 23, 2001 have enrolled as a student in the City College of San Francisco and who have allegedly been denied their rights under Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act ad 42 U.S.C. Section 1983 to access to the programs, services, activities and/or facilities of the City College of San Francisco as a result of physical barriers.

(2) All persons (other than students) disabled by mobility impairments who since November 23, 2001 have used the programs, services, activities and/or facilities of the City College of San Francisco, and who have allegedly been denied their rights under Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act ad 42 U.S.C. Section 1983 to access to the programs, services, activities and/or facilities of the City College of San Francisco as a result of physical barriers.

Plaintiff Estoria Cherry, who has cerebral palsy and scoliosis, is the named plaintiff for the first proposed class. She uses a walker for mobility or a wheelchair if traveling long distances. She is capable of using stairs with extreme difficulty but typically uses elevators (Estoria Cherry Decl. ¶ 3). At the main campus of City College, Ms. Cherry has experienced difficulty with poorly-designed or insufficiently large stalls and heavy doors with round knobs (rather than lever handles or automatic doors), restricting her access to the women's restroom in the Art Extension Building (*id.* ¶¶ 4–5). She further alleges that the elevators are frequently out of service, preventing her from attending classes in the Art Extension Building and Cloud Hall, which adversely affects her grades (*id.* ¶¶ 6–8). She also alleges problems with the automatic door-openers at Cloud Hall and the Rosenberg Library Building (*id.* ¶ 9). In addition, she

claims that there are an insufficient number of designated parking spaces near her classes and that access ramps to buildings are too steep and poorly-maintained, such that there are cracks in the sidewalk that cause her to stumble (*id.* ¶¶ 9–11). Likewise, she finds that many paths of travel between buildings are inaccessible because they are either too steep or include stairs (*id.* ¶¶ 12–13). Finally, while she has been provided with a special desk in her classrooms, Ms. Cherry alleges that non-disabled students often occupy her desk (*id.* ¶ 19).

Plaintiff Margie Cherry, Estoria's mother, is the named plaintiff for the second proposed class. She suffers from rheumatoid arthritis and sciatica. She has difficulty using stairs and prefers to use a ramp or an elevator. Although she has used a walker in the past, she apparently no longer needs one, although like her daughter, she has a disabled parking placard (Margie Cherry Decl. ¶ 3). In conjunction with volunteer work or private events for various non-profit organizations, she has used the facilities at the Southeast and Evans campuses. Mrs. Cherry echoes her daughter's complaints regarding the number of designated parking spaces and the steepness of access ramps (*id.* ¶¶ 6–7). She further alleges that elevators are either inaccessible or non-existent (*id.* ¶¶ 9–10). Mrs. Cherry also alleges that there exist no procedures for non-students to complain about the inaccessibility of facilities at City College (*id.* ¶ 11).

Plaintiffs also proffer declarations from Nicholas Feldman, Richard Skaff and Barry Atwood. Mr. Feldman intends to become enrolled at City College in summer 2005, but is not yet a student. Mr. Skaff and Mr. Atwood are non-students with mobility disabilities, who assert that they have also experienced difficulty accessing facilities on the main campus.

## ANALYSIS

1. **LEGAL STANDARD.**

In determining whether class certification is appropriate, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather, whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974)(internal citation omitted). In other words, the Court should not "conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *Id.* at 177. Thus, despite defendants' vigorous and detailed defense that it

3

has fully satisfied its Title II obligations, such arguments on the merits will have to be considered in subsequent proceedings.

A motion for class certification must satisfy the prerequisites of FRCP 23(a) as well as one of the three conditions set forth by FRCP 23(b). Rule 23(a) provides:

> **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact in common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(b)(2), under which plaintiffs seek class certification, further requires the Court to find that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

### 2. APPLICATION.

The issue presented is the extent to which a plaintiff class should be certified under FRCP 23. The action concerns the rights of mobility-disabled students and the problem posed by architectural barriers at City College.

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. 12132. The Act authorized the Attorney General to issue regulations to implement Title II.

Under those regulations, a public entity, like City College, must "operate each service, program or activity so that the service, program or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." 28 C.F.R. 35.150(a). The regulations specify, however, that a public entity is not necessarily required "to make each of its existing facilities accessible to and usable by individuals with disabilities." "Existing facilities" refers to structures already in place as of January 26, 1992. A public entity may comply with the "readily accessible" requirement "through such means as redesign of equipment,

reassignment of services of accessible buildings, assignment of aides to beneficiaries, home visits, delivery of services at alternate accessible sites, alteration of existing facilities and construction of new facilities," among others (§ 150(b)(1)). "A public entity is not required to make structural changes in existing facilities where other methods are effective in achieving compliance with this section" (§ 150(b)(1)). New construction (after January 26, 1992) meeting the ADAAG (or the UFAS) standards "shall be deemed to comply" with the regulations. Departures therefrom shall be permitted "when it is clearly evident that equivalent access to the facility or part of the facility is thereby provided" (§ 151(c)). When an existing facility is altered, it must be altered "to the maximum extent feasible" so that the altered portion "is reasonably accessible to and usable by individuals with disability" (§ 151(b)). Newly constructed or altered streets and walkways and stairs must contain curb ramps (§ 151(e)).[1]

The complaint alleges that City College is riddled with architectural barriers denying mobility-disabled students equal access to its programs. The list of barriers includes noncompliant restrooms, steep and/or broken walkways, heavy doors and broken or inaccessible elevators. To this, City College responds that when a disabled student requests assistance, its Disabled Students Program and Services ("DSPS") provides an "accommodation" or "method" to ensure equal access to the program, if not the building. The most pertinent DSPS responses are (i) moving the entire class to an alternate location, (ii) allowing the student to meet a particular course requirement elsewhere, (iii) notification in advance of elevator problems, (iv) providing scooters to students, and (v) providing wheelchair-accessible tables and work benches.

Building on this list, City College argues that each disabled student in the putative class will have a unique story to tell and therefore individual issues will predominate, making class treatment unavailable under FRCP 23(a). It is true that the Ninth Circuit has regularly said under Title II that "meaningful access" to a "program" requires a fact-specific, individualized

---

[1] Title II of the ADA was expressly modeled after Section 504 of the Rehabilitation Act, which prohibits discrimination against disabled individuals by any program or activity receiving federal financial assistance, with differences not material to the issue of class certification. 29 U.S.C. 794. For the purposes of this motion, Title II and Section 504 are considered together.

5

analysis. *See, e.g., Bird v. Lewis & Clark College*, 303 F.3d 1015, 1020 (9th Cir. 2002).[2] These remarks were not, however, directed at the FRCP 23 issue. Nonetheless, the remarks were aimed at the merits of the particular plaintiff's claims. Those decisions were not brought as class actions. That said, the individualized nature of various claimants' cases would normally raise a warning flag against class treatment. *See Chandler v. City of Dallas*, 2 F.3d 1385 (5th Cir. 1993), *cert. denied*, 511 U.S. 1011 (1994).

On the other hand, the Ninth Circuit has held in an ADA case that the factual differences among class members do not necessarily bar class litigation so long as the lawsuit challenges a "system-wide practice or policy that affects all of the putative class members." That statement arose in an appeal reviewing a district judge's certification of a class of disabled prisoners and parolees. The certified class, which was twice amended by stipulation after the class certification hearing, was challenged after a bench-trial finding that the California Board of Prison Terms had relied on written forms and notices to do its business and had categorically failed to provide avenues for blind and other impaired prisoners or parolees to even grasp the content of the forms and notices sent to them, all in violation of the same statutes asserted here. *Armstrong v. Davis*, 275 F.3d 849, 868–70 (9th Cir. 2001); *see also Lightbourne v. County of El Paso*, 118 F.3d 421 (5th Cir. 1997) (upholding class certification in an action challenging a statewide policy not to direct local voting officials to comply with Section 504 and ADA).

Judge Susan Illston has set forth and reconciled the competing threads of the caselaw, doing so in an ADA action against an auto manufacturer (although ultimately denying class certification in that case). Certification, she noted, is normally improper due to the individualized nature of the disability requirement as well as the case-by-case nature of the accommodations issue. Yet, she observed, certification may be proper where there is a uniform application of a specific policy to a class of similarly-disabled individuals. Judge Illston cited four such certifications by district courts under the ADA and/or Section 504 (not re-cited here). *Sokol v. New United Motor Mfg., Inc.*, 1999 U.S. Dist. LEXIS 20215 (N.D. Cal. Sept. 20, 1999).

---

[2] *See also Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002); *Wong v. Regents of the Univ. of Cal.*, 192 F.3d 807, 181 (9th Cir. 1999); *Eukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1048 (9th Cir. 1999).

6

1  In a different unpublished order, Judge Illson also denied a motion to de-certify a
2  previously-stipulated class, with respect to the accessibility of services, programs and activities
3  for students in San Francisco public schools. *Lopez v. San Francisco Unified School District*,
4  No. C 99-3260 SI (N.D. Cal. filed Sept. 8, 2003).[3]

Invoking the individual-issues model, City College argues forcefully that the myriad ways in which its DSPS has responded to hundreds of student disability problems, as to mobility alone, will lead to an unmanageable morass and that the rights of absent class members will be compromised unfairly since plaintiff has but one isolated narrative to tell. On the other hand, plaintiffs' counsel invoke the systemic-policy model. They say this case is not about case-by-case accommodations at all but solely about systemic violations of the law affecting all mobility-disabled students uniformly. The main question presented boils down to which model best describes this case.

This order holds that there are common important questions in this case that fit the systemic-policy model. It is true in all probability that each individual disabled student will use only a limited subset of the buildings spread out over City College's nine campuses during his or her college career. But, within reason, each student is *at risk of* engaging in studies or activities *anywhere* on the campuses. This being so, each student has a legitimate stake in seeing that all nine campuses are either fully compliant or, at least, that program accessibility is properly provided despite noncompliant facilities.

To be more specific, if Building X is an "existing" (*i.e.*, old) facility with noncompliant restrooms, discovery herein will reveal how City College has, if at all, taken counter-measures to provide meaningful access to the programs offered in Building X. This will require a building-by-building analysis. Each student with a mobility disability has a common interest in resolving the issue, given that each may be at risk of needing to use the building or at least to subscribe to the programs offered therein from time to time. As for pathways, the need is even clearer. Students with mobility disabilities have a common interest in eliminating the fear of

---

[3] Contrary to defendants' argument, the rule against citing unpublished Ninth Circuit decisions has no application to unpublished district court decisions, which are citable (but, of course, not binding).

7

having to navigate potentially dangerous paths on campus in order to participate equally in their programs of study. (This, of course, assumes *arguendo*, that students have a private right of action, a common issue that will have to be litigated and resolved later.)

Perhaps it will turn out that City College is correct that it has in place a policy of providing program access by moving all classes with disabled students to compliant buildings with compliant pathway access (or providing other methods or accommodations) and that such a policy will be upheld as sufficient. In examining City College's contention, it will be necessary to study how it has responded to specific barriers in individual cases. But this will not be as hard as alleged. The Court has studied the file carefully. The DSPS responses have fallen into a pattern. Whenever an inaccessibility problem has arisen, DSPS almost always has responded in one of the five ways listed above insofar as mobility is concerned. Arguably, DSPS merely waits for requests before responding at all, *i.e.*, it is not proactive in heading off issues before they arise and provides accommodations only upon request, or so it is alleged (over a vehement denial). This presents a question common to the entire class, namely whether the DSPS standard menu of options passes muster.

More specifically, the Court finds that there are questions of law or fact common to the class, as follows:

    1.    Whether City College adopted a "transition plan" as required by 35 C.F.R. 150(d);

    2.    Whether any such plan was adequate under the regulations;

    3.    The extent to which any such plan remains unimplemented;

    4.    Whether class members have a private right of action to enforce 35 C.F.R. 150(d) and/or the terms of any transition plan adopted under it;

    5.    Whether City College has adopted and implemented an adequate evacuation plan for mobility-disabled students and whether a private right of action therefor exists;

    6.    Whether City College has adopted a systemic policy of leaving architectural barriers in place and relying solely on "accommodations upon

8

request" to mitigate their effects and the extent to which a private right of action therefor exists;

       7.     Have the "new" construction and/or "alterations" been in compliance with 28 C.F.R. 35.151 and to what extent to plaintiffs have a private right of action to challenge any deficiencies;

       8.     Whether the DSPS menu of responses for mobility-disabled students provides meaningful access to City College's services, programs and activities;

       9.     Whether the alleged settlement between the federal Office of Civil Rights and City College in 1993 bars this action or one like it by any absent class member; and

       10.    Whether City College receives federal assistance.

A FRCP 23(b)(2) class for declaratory and injunctive relief only is unlikely to devolve into a case-by-case analysis of each class member's proof of disability. That individualized inquiry would be necessary were damages sought by each class member. But the damages issue will not be certified for class treatment, for the reasons stated momentarily. Nonetheless, class members will be barred from re-litigating the class issues should they subsequently bring their own disability lawsuits against defendants. For the foregoing reasons, this order finds that common issues will predominate over individual issues.

        \*      \*      \*

The claims of Estoria Cherry are typical of the class in the sense that she has, at least allegedly, a legitimate mobility impairment and has had trouble, at least allegedly, attending her classes due to the physical barriers that even City College acknowledges still exist. City College asserts that, in truth, she is not a good student and simply wants to blame the college for her own derelictions. This assertion, however, goes more to Ms. Cherry's damages claim than the merits. An objective reasonableness test will be used to determine "meaningful access." Ms. Cherry shares a common concern with all mobility-disabled students to win on this issue, which is sufficient to demonstrate typicality. She is also adequate to prosecute the issues

certified for class treatment.[4] Her individual study habits, if as poor as defendants maintain, will affect primarily, if not only, her damages claim.

Turning to the other FRCP 23 requirements, this order finds that the numerosity requirement is met.[5] Furthermore, this order finds that FRCP 23(b)(2) is satisfied. City College has acted or refused to act on grounds generally applicable to the entire class, thereby making appropriate final relief with respect to the class as a whole. This finding is premised on the systemic-policy issues set forth above.

Accordingly, plaintiff's motion for class certification is **GRANTED-IN-PART**. This order certifies the following class for the purposes of injunctive and declaratory relief only:

> All students disabled by mobility impairments enrolled at the City College of San Francisco since November 23, 2001, and who and who seek access to its services, programs and/or activities.

The class issues to be litigated are those set forth above as common issues. This order appoints Estoria Cherry as the class representative. She is ordered to attend all future hearings and to keep herself informed about the progress of the case so that she can assist in its prosecution. This order further appoints Attorney Guy Wallace as class counsel, finding that he is qualified under the FRCP 23(g)(1)(C) criteria, all of which have been duly considered (see Wallace Decl.). If any other applicant for class counsel comes forward and seeks to be appointed in place of Mr. Wallace under FRCP 23(g)(2)(B), then the Court will consider such application so long as it is seasonably made.

At this time, the issue of damages will not be certified for class treatment. This order finds Estoria Cherry's own circumstances are too unique to provide adequate representation on this issue and that the issue would be too individualized anyway. At present, the Court finds

---

[4] Putative class representatives cannot adequately protect the class if their personal interests are antagonistic to or in conflict with the objectives of those they purport to represent. *Hansberry v. Lee*, 311 U.S. 32, 44–45 (1940). The key inquiry is whether the named plaintiffs have litigation goals in conflict with the interests of absent class members. *Mayfield v. Dalton*, 109 F.3d 1423, 1427 (9th Cir. 1997). Here, defendants do not seem to suggest that Estoria Cherry has any conflicts of interest with the proposed class.

[5] The numerosity requirement does not require any specific minimum number of class members. Rather, the focus of the inquiry is whether joinder of the class is impracticable, which depends on the facts and circumstances of each case. *Hanlon v. Chrysler*, 150 F.3d 1011, 1019 (9th Cir. 1998). Here, defendants have indicated that there are at least 215 students with alleged mobility disabilities, according to DSPS files.

1  that the issue of individual damages should be left to each student to assert as he or she wishes
2  in subsequent proceedings, including separate lawsuits.  This order recognizes that a
3  certification under FRCP 23(b)(2) may include damages issues, even if individualized, unless
4  the appropriate final relief relates exclusively or predominantly to money damages.  *Molski v.*
5  *Gleich*, 318 F.3d 937, 947 (9th Cir. 2003)(internal citations omitted).  But, this is not required.
6  FRCP 23(c)(4)(A)("an action may be brought or maintained as a class action with respect to
7  particular issues").  For the reasons stated, damage claims will not be treated on a class-wide
8  basis.  *Compare Ryan v. Carl Corp.*, 1999 U.S. Dist. LEXIS 366 (N.D. Cal. 1999).
9  Ms. Cherry's own damage claim, of course, will be tried to the jury.

10       A stern caveat must be made.  The complaint herein and the briefing by plaintiffs'
11  counsel lent themselves to the charge of overbreadth and individualized issues.  This was
12  exacerbated by misleading descriptions of the caselaw.  Only by conceding during the briefing,
13  particularly the supplemental briefing, that class treatment would be appropriate only for
14  systemic policies and practices common across the class did counsel retrieve some victory from
15  the jaws of defeat.  Having prevailed (in part) on this motion, counsel should be vigilant and
16  mindful to concentrate this case on systemic policies and practices common across the class.
17  Should this case degenerate into a plethora of individual issues, the issue of class certification
18  may be revisited.  Similarly, if students are eventually held not to have private rights of action
19  as to the transition plan and other systemic policies alleged by plaintiffs, then the issue of class
20  certification may be revisited as to the remainder of the litigation.

21       Finally, this order **DENIES** the motion to certify a class of the general public (*i.e.*,
22  non-students) who may from time-to-time visit one of City College's campuses and/or use its
23  facilities.  First, the relevant statutes do not require accessible *facilities*, only that services,
24  programs or activities be rendered accessible.  Second, the proposed representative for the
25  non-student class, Margie Cherry, does not have standing to sue because she has failed to
26  demonstrate that her rheumatoid arthritis and sciatica make her a "qualified individual with a

11

disability."[6] Third, the proposed class could even include individuals who happen to take a shortcut through one of the nine campuses or mere sight-seers.  Such a proposed class is indefinite and its members would not be ascertainable, as required by FRCP 23(c)(1)(B).  No one could know who is or is not bound by the result.  *See Simer v. Rios*, 661 F.2d 655, 669 (7th Cir. 1981)(affirming denial of class certification); *Rodriguez v. Gates*, 2002 U.S. Dist. LEXIS 10654 at *31–35 (C.D. Cal. 2002)(denying class certification).  Accordingly, the motion for class certification is **DENIED** with respect to non-students.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for class certification is **GRANTED-IN-PART AND DENIED-IN-PART**.  Accordingly, this order certifies the following class:

> All students disabled by mobility impairments enrolled at City College of San Francisco since November 23, 2001, and who seek access to its services, programs and/or activities.

This class is certified solely for injunctive and declaratory relief, with respect to the common questions of law or fact under Title II and Section 504, as listed above.  The Court is of the view that the common issues concerning private causes of action should be decided on summary judgment, promptly after the class notice is served.  Defendants shall file such a motion on the regular 35-day track within fourteen days of the giving of class notice.

With respect to the pending discovery dispute, plaintiffs' motion to compel production of names and contact information for potential class members is **DENIED**, except as follows. Instead, the Court will direct appropriate notice to the class, pursuant to FRCP 23(d)(2).  This notice shall inform potential class members (in plain, easily understood language) of:

- the nature of this litigation;

---

[6] In order to have standing to sue under Title II or Section 504, a plaintiff must demonstrate that he or she is a "qualified individual with a disability."  This phrase is defined as "an individual with a disability, who, with or without reasonable modifications to rules, policies, or practices, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  42 U.S.C. 12131(2).  An individual with a disability is further defined to mean any person, with certain exclusions, who has a physical or mental impairment that substantially limits one or more major life activities, has a record of such an impairment; or is regarded as having such an impairment.  42 U.S.C. 12102(2)(A)–(C); 29 U.S.C. 705(20)(B)(i)–(iii).

- • the definition of the class certified by this order;
- • the class claims, issues, or defenses, including the fact that damages issues have not been certified;
- • that class members will be bound by the outcome;
- • the option to enter an appearance through counsel if desired;
- • the opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise come into the action;
- • contact information to contact class counsel;
- • that absent a written objection within 21 days of receiving notice, their names and contact information shall be provided to class counsel, subject to a protective order; and
- • any other points counsel wish to include.

Within seven calendar days, the parties shall jointly submit a proposed notice that incorporates these points. Defendants shall mail (and/or email) the notice but at plaintiffs' expense (*i.e.*, any cost incurred shall be reimbursed by plaintiffs later).

**IT IS SO ORDERED.**

Dated: June 15, 2005

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE