IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGIE CHERRY and ESTORIA CHERRY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY COLLEGE OF SAN FRANCISCO ("City College") LAWRENCE WONG, in his official capacity as President of the Board of Trustees, MILTON MARKS, III, in his official capacity as Vice-President of the Board of Trustees, DR. NATALIE BERG, JOHNNIE CARTER, JR., DR. ANITA GRIER, JULIO J. RAMOS, RODEL E. RODIS, in their official capacities as members of the Board of Trustees, and DR. PHILIP R. RAY, JR., in his official capacity as Chancellor,<br><br>Defendants. | No. C 04-04981 WHA<br><br>**ORDER GRANTING PARTIAL SUMMARY JUDGMENT RE PRIVATE RIGHT OF ACTION** |

**INTRODUCTION**

In this action alleging violations of Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. 12101 *et seq.*, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794, and 42 U.S.C. 1983, defendants now move for partial summary judgment to resolve the issue of whether plaintiffs have a private right of action to enforce certain federal regulations accompanying Title II of the ADA. This motion is **GRANTED**.

**STATEMENT**

This action revolves around claims that defendant City College of San Francisco ("City College") has failed to remedy various architectural and physical barriers that allegedly render its nine campuses inaccessible to persons with mobility disabilities. By order dated June 15,

2005, the following class was certified for the purposes of injunctive and declaratory relief only:

> All students disabled by mobility impairments enrolled at the City College of San Francisco since November 23, 2001, and who seek access to its services, programs and/or activities.

The same order identified at least ten issues that raised questions of law or fact common to the class:

    1.    Whether City College adopted a "transition plan" as required by 35 C.F.R. 150(d);

    2.    Whether any such plan was adequate under the regulations;

    3.    The extent to which any such plan remains unimplemented;

    4.    Whether class members have a private right of action to enforce 35 C.F.R. 150(d) and/or the terms of any transition plan adopted under it;

    5.    Whether City College has adopted and implemented an adequate evacuation plan for mobility-disabled students and whether a private right of action therefor exists;

    6.    Whether City College has adopted a systemic policy of leaving architectural barriers in place and relying solely on "accommodations upon request" to mitigate their effects and the extent to which a private right of action therefor exists;

    7.    Have the "new" construction and/or "alterations" been in compliance with 28 C.F.R. 35.151 and to what extent to plaintiffs have a private right of action to challenge any deficiencies;

    8.    Whether the DSPS menu of responses for mobility-disabled students provides meaningful access to City College's services, programs and activities;

    9.    Whether the alleged settlement between the federal Office of Civil Rights and City College in 1993 bars this action or one like it by any absent class member; and

    10.    Whether City College receives federal assistance.

Pursuant to the Court's request, defendants now move for partial summary judgment on the legal issue of whether plaintiffs have a private right of action to enforce the federal regulations accompanying Title II of the ADA. Specifically, defendants argue that there is no private right of action under 28 C.F.R. 35.105, 28 C.F.R. 35.150(d) or with respect to its allegedly inadequate emergency-evacuation plans. (Defendants did *not* move for summary judgment as to 28 C.F.R. 35.151.) In addition, defendants preemptively seek a judicial

1   determination that the 1993 settlement agreement between the Office of Civil Rights and City
2   College is both admissible evidence and should be accorded great weight at trial.

## ANALYSIS

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. 12132.  There is no dispute that there exists a private right of action under Title II for "any person alleging discrimination on the basis of disability."  42 U.S.C. 12133.

Pursuant to the federal regulations accompanying Title II, a public entity, like City College, must "operate each service, program or activity so that the service, program or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." 28 C.F.R. 35.150(a).  This does not necessarily require that each existing facility be made accessible.  28 C.F.R. 35.150(a)(1).  Any alteration of existing facilities or "new" construction (*i.e.*, work commenced after January 26, 1992), however, is analyzed under a different regulation.  28 C.F.R. 35.151.

Structural changes to existing facilities are not required "where other methods are effective in achieving compliance."  28 C.F.R. 35.150(b)(1).  But, if such structural changes "will be undertaken to achieve program accessibility, a public entity that employs 50 or more persons shall develop, within six months of January 26, 1992, a transition plan setting forth the steps necessary to complete such changes."  28 C.F.R. 35.150(d)(1).  The federal regulations further contemplate that no later than July 26, 1992, a public entity shall engage in a self-evaluation of its services, policies and practices to identify whether any modifications thereto are necessary to achieve compliance.  28 C.F.R. 35.105.

Whether plaintiffs have a private right of action to enforce 28 C.F.R. 35.105 or 28 C.F.R. 35.150(d) is a purely legal question.  There is no controlling Ninth Circuit authority on this issue.  Both sides have proffered decisions from other circuits and various district courts in support of their view.  This order concludes that there is no private right of action to enforce

either the self-evaluation or transition-plan requirements set forth in the federal regulations accompanying Title II of the ADA.

Plaintiffs argue that the regulations accompanying Title II constitute authoritative interpretations of the rights created by 42 U.S.C. 12132. *See Chevron U.S.A. Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 843–44 (1984)(explaining that where Congress expressly delegates authority to an agency to elucidate a specific provision of a statute by regulation, those legislative regulations are "given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute"). "A Congress that intends the statute to be enforced through a private cause of action intends the authoritative interpretation of that statute to be enforced as well." *Alexander v. Sandoval*, 532 U.S. 275, 284 (2001). Because there is a private cause of action under Title II, plaintiffs assert that there must also be a private cause of action to enforce the accompanying regulations. This oversimplifies the holding of *Sandoval*.

Private rights of action to enforce federal law must be created by Congress. *Id.* at 286. "Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Id.* at 291. Writing for the majority, Justice Scalia further explained:

> Thus, when a statute has provided a general authorization for private enforcement of regulations, it may perhaps be correct that the intent displayed in each regulation can determine whether or not it is privately enforceable. But it is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself. *Ibid.*

Defendants correctly argue that Title II does *not* contain a general authorization for the private enforcement of its accompanying regulations. Thus, the focus of this order is whether allowing plaintiffs to enforce the particular regulations in dispute would create any private cause of action beyond that created by Congress for enforcing Title II itself.

The Sixth Circuit recently conducted such an analysis. *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901 (6th Cir. 2004). The Court agrees with the reasoning set forth therein. Specifically, the issue was framed as follows:

> What *Sandoval* makes clear is that a private plaintiff cannot enforce a regulation though a private cause of action generally available under the

4

controlling statute if the regulation imposes an obligation or prohibition that is not imposed generally by the controlling statute. On the other hand, if the regulation simply effectuates the express mandates of the controlling statute, then the regulation may be enforced via the private cause of action available under that statute. *Id.* at 906 (internal citations omitted).

With respect to 28 C.F.R. 35.151, the Sixth Circuit found that this regulation "imposes requirements specifically envisioned by the statute" *Id.* at 910. It analyzed the statute, the legislative history and case law, concluding that § 35.151 was intended to be "enforceable through Title II's private cause of action." *Id.* at 912 (finding "[p]erhaps most instructive" legislative intent "that the private cause of action available under Title II extend to the enforcement of its regulations as well, insofar as a violation of a regulation resulted in a denial of access"). In this regard, the panel expressly cited and agreed with the Tenth Circuit's holding in *Chaffin v. Kansas State Fair Board*, 348 F.3d 850, 857–60 (10th Cir. 2003), upon which plaintiffs heavily rely. *Ibid.*[*]

On the other hand, the Sixth Circuit found that 28 C.F.R. 35.150(d) created obligations not necessarily required by Title II and was therefore not privately enforceable. *Id.* at 913–15. While a violation of § 35.151 "denies the disabled meaningful access to public services by perpetuating architectural barriers that impede such access," a violation of 28 C.F.R. 35.150(d) "does not in and of itself similarly hinder the disabled." *Id.* at 914. It further commented that:

> Section 35.150(d) may create a procedural requirement that encourages public entities to consider and plan ways in which they will accommodate the disabled, and it may ultimately facilitate compliance with Title II, but there is no indication that a public entity's failure to develop a transition plan harms disabled individuals, let alone in a way that Title II aims to prevent or redress. Indeed, it is conceivable that a public entity could fully satisfy its obligations to accommodate the disabled while at the same time fail to put forth a suitable transition plan. *Ibid.*

---

[*] Unlike the Sixth Circuit, the Tenth Circuit did not engage in a separate analysis for each regulation in dispute. Rather, it considered the regulations accompanying Title II collectively and found that they "simply provide the details necessary to implement the statutory right created by § 12132 of the ADA. They do not prohibit otherwise permissible conduct." 348 F.3d at 858. This order agrees with the Sixth Circuit that there is a distinction between regulatory violations that, by themselves, would deny the disabled meaningful access to public services and those that would not.

5

1  This applies equally to 28 C.F.R. 35.105.  Similarly, the development of emergency-evacuation
2  plans is not an obligation imposed by Title II.  (Nor, for that matter, is the development of
3  emergency-evacuation plans a specific requirement of any accompanying regulation.)
4          Plaintiffs' counsel argued at the hearing that the Congress expressly endorsed the
5  promulgation of program-accessibility regulations for Title II consistent with those
6  accompanying the Rehabilitation Act, found at 28 C.F.R. 39.101 *et seq.*  Yet, even if Congress
7  intended to adopt similar regulations, it does not necessarily follow that Congress also intended
8  to create a private right of action to enforce each and every regulation, regardless of whether the
9  corresponding regulation under the Rehabilitation Act would have been privately enforceable.
10 Indeed, this precise line of reasoning was rejected by the Sixth Circuit.  *Ibid.*
11         Before *Ability Center*, various district courts had also found that there was no private
12 right of action to enforce certain regulations independent of a claim of disability-related
13 discrimination.  In *Matthews v. Jefferson*, the court noted that "neither the [ADA] nor the
14 aforementioned regulations provide for a mechanism for enforcement of the self-evaluation
15 requirement," yet held that "plaintiff may use evidence of failure to comply with these
16 requirements to buttress his claim of discrimination."  29 F. Supp.2d 525, 539 (W.D. Ark.
17 1998)(internal citations omitted).  In *Deck v. City of Toledo*, the court agreed that "there is no
18 private right of action to enforce the self-evaluation and transition-plan requirements set forth in
19 the regulations accompanying Title II" so any failure to comply with those requirements was
20 only relevant to the extent that plaintiffs could "demonstrate that such failure bears a causal
21 connection to their claims of discrimination."  76 F. Supp.2d 816, 823 (N.D. Ohio 1999).
22 Likewise, in *Ross v. City of Gatlinburg*, the court "d[id] not find any statutory basis to assert a
23 cause of action based solely on a public entity's failure to conduct a self-evaluation or develop a
24 proper transition plan."  327 F. Supp.2d 834, 844 (E.D. Tenn. 2003)(further holding that "[s]uch
25 evidence must contribute to or result in discrimination as proscribed by Title II").
26         The admissibility of evidence pertaining to defendants' alleged failure to comply with
27 the self-evaluation and transition-plan regulations remains to be decided another day.  To the
28 extent that plaintiffs were attempting to shortcut around their burden of proof at trial (*i.e.*, by

6

merely demonstrating violations of certain federal regulations rather than a violation of Title II itself), this approach is rejected.  This order recognizes, however, that such evidence could be relevant, if causally related to plaintiffs' claims of discrimination.

### CONCLUSION

For the aforementioned reasons, defendants' motion for partial summary judgment as to this narrow legal question is **GRANTED**.  While defendants do not appear to contest that there exists a private right of action to enforce 28 C.F.R. 35.151, this order finds that there is no private right of action under 28 C.F.R. 35.105 or 28 C.F.R. 35.150(d).  Moreover, there is no statutory or regulatory authority establishing a private right of action to specifically challenge allegedly inadequate emergency-evaluation plans independent from any claims of disability-related discrimination.

Finally, as to the question of whether defendants' settlement agreement with the Office of Civil Rights is admissible, the Court defers ruling on this issue until the pretrial trial conference.  Please re-notice this issue as a motion *in limine* at that time.

**IT IS SO ORDERED.**

Dated:  October 14, 2005

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE