1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7

8                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   MARGIE CHERRY and ESTORIA CHERRY,          No. C 04-04981 WHA
     on behalf of themselves and all others similarly
11   situated,

12              Plaintiffs,                      **ORDER GRANTING MOTION TO
                                                 ENFORCE AMENDED
13        v.                                     STIPULATED JUDGMENT AND
                                                 CONSENT DECREE**
14   THE CITY COLLEGE OF SAN FRANCISCO
15   ("City College") LAWRENCE WONG, in his
     official capacity as President of the Board of
16   Trustees, MILTON MARKS, III, in his official
     capacity as Vice-President of the Board of
17   Trustees, DR. NATALIE BERG, JOHNNIE
     CARTER, JR., DR. ANITA GRIER, JULIO J.
18   RAMOS, RODEL E. RODIS, in their official
     capacities as members of the Board of
19   Trustees, and DR. PHILIP R. RAY, JR., in his
     official capacity as Chancellor,
20
                Defendants.
21   _____/

22                          **INTRODUCTION**

23          In this action under the Americans with Disabilities Act, plaintiffs move to enforce the

24   stipulated amended judgment and consent decree.  Pursuant to the judgment, defendant City

25   College of San Francisco was required to make three facilities on its Ocean Avenue campus

26   fully compliant with the Americans with Disabilities Act Accessibility Guidelines, or

27   California's Title 24 disability access code, whichever is stricter, by April 1, 2007.  Defendants

28   have failed to meet that deadline, and thus have not complied with the consent decree.

*United States District Court*
For the Northern District of California

Accordingly, plaintiffs' motion to enforce the amended judgment is **GRANTED**. Defendants are ordered to file a comprehensive list of barriers that need to be fixed no later than **OCTOBER 18, 2007**, a list that should have been done months ago and which should be close to completion by now. Defendants must fix those barriers no later than **DECEMBER 11, 2007**.

**STATEMENT**

The lengthy history of this action is fully recounted in prior orders. It was originally filed as a putative class action on November 24, 2004, alleging that some of City College's facilities were not in compliance with federal and state disability non-discrimination laws. In June of 2005, a class was certified for injunctive relief on behalf of all students disabled by mobility impairments who enrolled at City College since November 23, 2001, who sought access to its services, programs, or activities.

The case settled on the eve of trial in February 2006. The parties entered into a stipulated judgment and order which was approved by this Court on April 17, 2006, after a fairness hearing. Among other items, it required City College to remove access barriers from its facilities. For new construction projects, it stated that "Defendants shall ensure that all future new construction and alteration work at SFCCD fully complies with ADAAG or Title 24, whichever standard is the most stringent with regard to disability access requirements" (Wallace Decl Exh. A, 10). It also required that Rosenberg Library, the Extended Opportunity Programs and Services building ("EOPS"), and the stadium press box and snack bar be made compliant no later than April 1, 2007 (*id*. at 11). April 1, 2007, is the earliest construction deadline set forth in the consent decree. Other construction deadlines fall within the next three years.

The stipulated judgment also addressed the topic of access surveys to determine the scope of work. It stated (*id*. at 11–12):

> Defendants shall retain the services of access expert Gary K. Waters AIA, to review all new construction and alteration plans for ADAAG and Title 24 compliance before any new constructions or alterations are scheduled and/or performed. The expert will also be responsible for review of plans prior to final approval by the Division of the State Architect. The expert shall also review the as-built conditions prior to project closeout so as to determine that the project and work was performed in accordance with the plans and specifications.

United States District Court
For the Northern District of California

2

1   The stipulated judgment made clear that although defendants could rely on the advice of access

2   experts, the facilities in question must comply with Title 24 or ADAAG irrespective of any

3   access expert's opinion.  Also, the facilities could not be made compliant by fixing only those

4   barriers listed in the stipulated amended judgment (*id*. at 5–6).

5        City College agreed to retain Gary Waters, plaintiffs' access expert, to serve as their

6   own access expert (Goldstein Decl. ¶ 2).  It also hired Howard Cameron, an additional project

7   manager, on November 1, 2006 (Cameron Decl. ¶ 3).  Despite these measures, defendants failed

8   to make arrangements with Waters to conduct a comprehensive access survey.  Defendants sent

9   Waters a letter asking him to sign off on a list of barriers without conducting a survey on

10  December 22, 2006 (Wallace Decl. Exh. B).  He responded, stating that he could not sign off on

11  any proposed modifications without first conducting a survey (*id*. at Exh. C).  He offered to

12  either do a survey before defendants began work or after they had completed the items on the

13  list (*ibid*.).

14       Leilani Battiste, City College's ADA Compliance Director, agreed to have Waters

15  perform a survey *after* work was completed, but by then, the deadline of April 1, 2007, was

16  quickly approaching (Battiste Decl. ¶¶ 12, 14).  A number of the improvements to EOPS,

17  Rosenberg Library, and the stadium press box and snack bar had been completed, others had

18  not.  City College claims now that it thought work would be completed on time, so they

19  attempted to schedule a survey with Waters.  Because of scheduling conflicts, no inspection was

20  conducted until April 17 and April 23, 2007 (*id*. at ¶¶ 16–18).  Waters did not give defendants

21  findings of any additional deficiencies until May 25, 2007 (*id*. at ¶ 19).

22       In late March, defendants became aware of problems with renovations to the third- and

23  fouth-floor bathrooms in the Rosenberg Library.  The contractor was having problems finding

24  supplies, but still insisted that it could meet the deadline (Cameron Decl. ¶¶ 10–11).  Eventually

25  that contractor refused to return to the work site (*id*. at ¶10).  Thereafter, defendants replaced

26  the contractor in early May (*id*. at ¶ 11).

27       Plaintiffs and defendants met in an advance of a hearing to prepare a joint status report.

28  Defendants admitted that work on the third- and fourth-floor bathrooms of the Rosenberg

Library was not completed (Wallace Decl. Exh. F, 5).  Moreover, Waters performed inspections and found additional deficiencies that had not been identified or addressed (*id*. at Exh. H). Parties also met thereafter to discuss progress in completing the renovations.  In a letter dated June 21, 2007, defendants represented that the work would be substantially completed by July 6, 2007 (*id*. at Exh. I).  The work was not completed by that date.  Parties also attended mediation on July 30, 2007, but were unable to resolve the matter.  This motion was filed by plaintiffs on August 9, 2007, and a hearing was held on September 13, 2007.

**ANALYSIS**

Courts have the inherent authority to enforce their orders by exercising their contempt powers.  "Because of their very potency, inherent powers must be exercised with restraint and discretion."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).  In a contempt proceeding, the moving party has the burden of showing that by clear and convincing evidence that the contemnors violated a specific and definite order of the court.  *Stone v. City and County of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992).  The burden then shifts to contemnors to demonstrate why they were unable to comply.  *Ibid*.  Failure to comply with a court order consists of not taking all reasonable steps within contemnor's power to comply with the order. *Balla v. Idaho State Bd. of Corr*., 869 F.2d 461, 466 (9th Cir. 1989).

**1.    NOTICE TO DEFENDANTS.**

First, defendants argue that they did not receive proper notice of plaintiffs' motion for contempt.  Although this motion is styled as a motion to enforce an amended judgment, the Court previously stated at a hearing on August 15, 2007, that defendants would be facing contempt if they failed to comply with the deadlines in the amended stipulated judgment (Johnson Reply Decl. Exh. A, 7:14–16; 8:9–10).  In their motion, plaintiffs argue that defendants should be held in civil contempt because of the nature of the relief sought here.

Civil contempt sanctions "are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard."  *International Union, UMWA v. Bagwell*, 512 U.S. 821, 827 (1994). For some contempt motions involving complex injunctions, fact finding may be necessary.  *See*

United States District Court

For the Northern District of California

4

*id.* at 833–34.  "The more punitive the nature of the sanction, the greater the [procedural] protection to which an individual is entitled."  *F.J. Hanshaw Enter., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1137 (9th Cir. 2001).

Here, defendants argue that because plaintiffs did not actually bring a motion for contempt or serve defendants with an order to show cause, they did not receive sufficient notice to be held in contempt.  Defendants cite *Florida Ass'n for Retarded Citizens, Inc. v. Bush*, 246 F.3d 1296, 1298 (11th Cir. 2001), for the proposition that an order to show cause is the general form of notice for civil contempt motions.  No authority from this circuit, however, has been found that *requires* an order to show cause for civil contempt proceedings.  Only notice and an opportunity to be heard are needed.

Defendants have clearly had adequate notice and an opportunity to be heard.  The deadline of April 1, 2007, was explicitly clear in the consent decree.  Defendants participated in a number of mediations and meetings with plaintiffs, so they knew plaintiffs were aware of the shortcomings in achieving compliance at least after the deadline had passed.  They attended two hearings in this Court at which the subject of contempt was discussed.  Plaintiffs then filed their motion, requesting contempt-style sanctions.  Defendants put far too much stock in the fact that this motion was not called a motion for contempt.  They were well aware of the risks of not meeting the deadlines.  Defendants then filed an opposition to the motion.  Both sides filed numerous declarations regarding compliance efforts.  Finally, a hearing was held on this motion at which defendants had an adequate opportunity to be heard.  It is hard to see what defendants would have said or done differently had the form of the paper said "order to show cause" rather than "motion to enforce."  Accordingly, defendants had adequate notice of this motion and an opportunity to be heard.

### 2. COMPLIANCE WITH THE AMENDED STIPULATED JUDGMENT.

As to compliance with the stipulated judgment, neither side disputes that the work on EOPS, the stadium press box and snack bar, and Rosenberg Library was not completed by April 1, 2007.  Instead, defendants argue that they substantially complied with the amended stipulated

5

1  judgment.  Admittedly they fell short, but they protest that they should not be penalized here

2  because they used their best efforts to meet the deadlines.

3        City College first attempts to rely on the list of barriers set forth in the stipulated

4  amended judgment.  In effect they argue that since they at least attempted to fix the items on the

5  list, they were in substantial compliance.  The list itself made clear that it is not exhaustive as to

6  all the things that needed to be fixed.  At the fairness hearing, it was made abundantly clear that

7  the list was only a starting point, not the ending point, *i.e.*, defendants had to find and to fix *all*

8  the shortfalls, not just those on the list. Moreover, defendants failed to timely arrange with an

9  access expert to conduct a comprehensive survey to define the scope of work.  Defendants

10  argue that even that would not guarantee that the facilities would be in compliance because the

11  access experts would not certify that the facilities were in compliance.  This argument ignores

12  the fact that it was City College's decision to sign on to the consent decree.  They did not have

13  to do so.  They could have negotiated with plaintiffs to have some other measure of the scope of

14  work.  They could have taken their chances at trial.  Absent a motion to amend the judgment,

15  defendants must live with the consent decree they asked the Court to impose.

16        City College also attempts to blame the access experts themselves.  Defendants could

17  not coordinate schedules with plaintiffs' access expert, Gary Waters, so they could not arrange

18  to have a comprehensive access survey performed until after the deadline had expired.  This

19  argument is belied by the fact that defendants attempted to rely on the list of barriers in the

20  stipulated amended judgment by trying to get Waters to sign off on the list.  The stipulated

21  amended judgment makes clear that the scope of work is not defined by the barrier list; the

22  facilities must be made ADAAG or Title 24 compliant (Wallace Decl. Exh. A, 10–11).

23  Defendants also contend that they had one of their employees, Larry Lauser, conduct a survey.

24  No evidence is presented on the scope or amount of barriers found by Lauser, so it is impossible

25  at this time to determine whether or not the work he identified could bring the facilities into

26  compliance.  Even then, defendants did not conduct a comprehensive access survey by any

27  access expert until the deadline had passed.  Nothing in the stipulated amended judgment

28  required them to use Gary Waters to determine the scope of work, or to conduct a survey at all.

**United States District Court**
For the Northern District of California

The fact remains, however, that defendants did not even complete work removing the barriers on the list by the deadline. In the face of all of this, defendants' arguments that they substantially complied with the judgment or used their best efforts to do so simply ring hollow.

Defendants also point the finger at contractor and supply problems. City College argues that it had every intention of complying with the judgment, but uncontrollable construction delays derailed its efforts. Defendants claim to have been unaware of these problems until April 1, 2007, the deadline for work to be done. As of that time, the only problem defendants knew of was the issues with conducting an access survey and determining the scope of work. Thereafter, they did not inform plaintiffs' counsel of the problems until late in May because they were "focused on rectifying the problem with the untimely contractor in the restrooms in Rosenberg Library" (Opp. 20). Again, they fault Waters for not alerting them to additional barriers in the stadium press box and snack bar until May 25, 2007. If defendants had conducted an access survey early on in the process, that additional roadblock could have been eliminated.

Despite this, defendants still did not fulfill their obligations under the stipulated amended judgment. If they had known of problems, they should have informed plaintiffs' counsel once they knew of them instead of waiting months to do so. If they knew they could not meet their obligations under the stipulated amended judgment, they should have not agreed to it. Defendants should have organized themselves so as to learn of compliance roadblocks in time to remove them rather than to drift along in a casual style, claiming to be surprised by events after the fact. Accordingly, defendants' arguments that they substantially complied with the judgment, or that they used their best efforts are unavailing.

City College also argues that it has met all deadlines in the consent decree excepting this one. This is so. This is the first deadline, however, that required City College to undertake construction and actually remove barriers. All others that came before dealt with things like posting an access guide on the internet, hiring a full-time ADA compliance director, and establishing written access policies and complaint procedures (Wallace Decl. Exh. A, 18–20). Defendants have met those deadlines, but many more construction deadlines remain. Their

**United States District Court**
For the Northern District of California

1    complete failure to meet the first construction deadline does not bode well for meeting the other

2    construction deadlines.

3    Finally, defendants argue that this motion is not necessary.  There is no dispute between

4    plaintiffs and defendants as to City College's obligations, so no interpretation of the consent

5    decree is needed.  It is correct that defendants have never disputed that the work was to be done

6    by April 1, 2007.  The mere fact that this is not in dispute does not excuse defendants' failure,

7    several months after the deadline has passed, to complete the necessary work.  Their promises

8    to fix all the barriers identified by both access experts ring hollow because they failed to meet

9    the obligations to which they agreed in signing the stipulated amended judgment.  Similarly,

10   defendants' contention that plaintiffs have just brought this motion in an attempt to rack up

11   attorney's fees is without merit.  They contend that there was no reason to bring this motion

12   because plaintiffs did not demonstrate that the motion will have any effect on class members.

13   Again, the district's agreement to comply with the judgment is not enough.  Moreover, plaintiffs

14   do not need to identify specific people that have been harmed by defendants' failure to meet the

15   deadlines.  Defendants simply did not hold up their end of the deal.  Accordingly, plaintiffs'

16   motion to enforce the stipulated amended judgment is **GRANTED IN PART AND DENIED IN**

17   **PART**.

18                                              **CONCLUSION**

19   For all of the above-stated reasons, plaintiffs' motion to enforce the amended stipulated

20   judgment is **GRANTED IN PART AND DENIED IN PART**.

21   No later than **OCTOBER 18, 2007**, defendants must create a comprehensive list of

22   barriers to be fixed in order to make the EOPS, the stadium press box and snack bar, and

23   Rosenberg Library compliant with ADAAG or Title 24, whichever is stricter.  This list must be

24   filed with the Court by October 18, 2007.  No proceedings will be held regarding the adequacy

25   of list.  Filing the list is not intended to constitute any kind of approval, nor does this estop

26   defendants against having to defend the adequacy of the list.

27   Defendants are ordered to hold in-person meetings of the compliance task force each

28   Monday morning until compliance is complete with all provisions of the consent decree.  All

**United States District Court**
For the Northern District of California

1  members must attend in person unless they are ill.  The task force must make specific, concrete

2  plans regarding how compliance is to be achieved, monitor progress, identify shortfalls and

3  obstacles in achieving compliance, and how they are to be overcome.  Minutes must be kept of

4  the meetings, and the minutes should be filed with the Court on the first business day of each

5  month, accompanied by a declaration describing the progress made in achieving compliance.

6  The minutes must state who attended.

7      Defendants are to pay all reasonable attorney's fees incurred by plaintiffs in filing this

8  motion.  Parties should follow the procedure set out in the accompanying order.  This order

9  reserves on any further remedial action pending satisfactory progress by defendants.

10

11      **IT IS SO ORDERED.**

12

13  Dated: October 1, 2007.

14  WILLIAM ALSUP
    UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28