IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGIE CHERRY and ESTORIA CHERRY on behalf of themselves and all others similarly situated,<br><br>  Plaintiffs,<br><br>  v.<br><br>THE CITY COLLEGE OF SAN FRANCISCO, *et al.*,<br><br>  Defendants.<br>_____/ | No. C 04-04981 WHA<br><br>**ORDER REQUESTING SUPPLEMENTAL INFORMATION REGARDING LIGHT SWITCH ISSUE** |

On December 9, 2010, a hearing was held after full briefing on defendants' motion to vacate judgment, terminate jurisdiction, and dismiss the action. Defendants contend that they have complied with all requirements of the stipulated judgment in this action, but plaintiffs assert that defendants' performance is deficient. Plaintiffs identify four alleged deficiencies with defendants' performance, one of which involves light switches.

The light switch quarrel appears to have arisen as follows. The stipulated judgment required defendants to lower existing standard light switches to a specific wall height at which they could be operated by persons with mobility impairments. Defendants obtained plaintiffs' consent to install motion sensors instead of lowering the switches. Motion sensors were installed. The motion sensors evidently were wired in series with the existing manual switches, such that the motion sensors are not functional unless the manual switches are closed (*i.e.*, in the "on" position). By contrast, the Court presumes that if the motion sensors had been wired *in parallel*

with the existing manual switches, the motion sensors would be functional regardless whether the manual switches were open or closed (*i.e.*, in the "on" or "off" position), because either device independently could complete the circuit that causes the lights to turn on or off.  Because the motion sensors were wired in parallel with the manual switches, plaintiffs now request that defendants install "lock boxes" on the pre-existing manual switches to ensure that those switches remain closed so that the motion sensors become permanently functional.

The parties are directed to submit sworn declarations answering the following questions by **NOON ON DECEMBER 13, 2010**.

1. Is the above description of the problem accurate?
2. Could the motion sensors have been placed electrically in parallel to the manual switches, thereby avoiding the problem at hand?  If so, why were the motion sensors not installed in parallel?
3. Was a parallel arrangement actually considered by defendant?  If so, when?
4. Was the issue of series versus parallel wiring discussed between the parties?  If so, what was said on this point?
5. How many motion sensors have been installed with this problem?
6. Was a specific blueprint or specification shown to plaintiffs' counsel or access expert (Gary Waters) before the motion sensors were installed, revealing that they would be wired in series with the existing manual switches?  If so, a copy of the relevant plan that was shown must be appended to the relevant declaration.
7. After the motion sensor installation began, was plaintiffs' counsel or expert Waters expressly so advised and

2

invited to examine the work? If so, exactly when in the timeline of installation did this occur?

    8. How many motion sensors have been installed?

    9. How many motion sensors have yet to be installed?

    10. When plaintiffs' counsel and/or expert Waters agreed to the motion sensors, why did they not specify that the sensors be installed in such a way as to avoid the present problem?

Counsel are requested to provide specific answers to the foregoing questions in five pages or less per side. Evasion will be taken as an admission that the truth would be adverse.

**IT IS SO ORDERED.**

Dated: December 13, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

3