IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGIE CHERRY and ESTORIA CHERRY on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY COLLEGE OF SAN FRANCISCO, *et al.*,<br><br>Defendants.<br>/ | No. C 04-04981 WHA<br><br>**ORDER REQUESTING SUPPLEMENTAL INFORMATION REGARDING DIEGO RIVERA THEATRE, VISUAL ARTS BUILDING, AND CLOUD HALL** |

This is a second follow-up request for more evidence after a recent hearing.

On December 9, 2010, a hearing was held after full briefing on defendants' motion to vacate judgment, terminate jurisdiction, and dismiss the action. Defendants contend that they have complied with all requirements of the stipulated judgment in this action, but plaintiffs assert that defendants' performance is deficient. Plaintiffs identify four remaining deficiencies with defendants' performance. A previous order requested supplemental information regarding one of the disputed issues — light switches (Dkt. No. 902). This order addresses the three remaining issues: (1) accessible seating in the Diego Rivera Theatre; (2) emergency exits in the lower Visual Arts Building; and (3) accessibility of 21 classrooms in Cloud Hall.

**1. DIEGO RIVERA THEATRE.**

Plaintiffs assert that the Diego Rivera Theatre has not yet been provided with accessible seating in the theatre area. Defendants, however, assert that they have in fact provided accessible

seating in the theatre area. The stipulated judgment requires defendants to ensure that all future construction for new facilities be compliant with the American with Disabilities Act Accessibility Guidelines (ADAAG) or Title 24 of the California Code of Regulations, whichever standard is the most stringent with regard to access requirements (Dkt. No. 676 at 3). Also noted in the stipulated judgment is the planned construction of a new Performing Arts Theatre to replace the Diego Rivera Theatre, with an estimated completion date of 2011 (Dkt. No. 676 at 11).

According to plaintiffs' access expert, Gary Waters, the Diego Rivera Theatre has not yet been provided with compliant accessible seating in the theatre area (Waters Decl. ¶ 8). Expert Waters also asserts that he is not aware of any new designs or plans for a new Performing Arts Theatre (*id*.). When questioned at the hearing whether he went to inspect the Diego Rivera Theatre for compliance, Expert Waters answered that he did not look at the floor plan of the theatre and has not seen whether accessible seating has been provided.

On the other hand, defendants assert that the Diego Rivera Theatre does have accessible seating for persons in wheelchairs (Battiste Supp. Decl. ¶ 9). At the hearing, defendants stated that the capacity of the Diego Rivera Theatre is 150 persons and that two or three accessible seats with companion seats have been provided. Defendants also claim that providing additional integrated seating would require extensive construction, while the new Performing Arts Theatre will include a fully accessible seating area (Battiste Supp. Decl. ¶ 10–11). Defendants assert that construction plans for the new Performing Arts Theatre have been approved by the State Architect and that they are waiting for state funding for the project to go to bid (Battiste Supp. Decl. ¶ 11). Defendants also state that they explained to Expert Waters a number of times in the spring and summer of 2010 that they were planning construction for the new Performing Arts Theatre, which is also evidenced by the stipulated judgement and in status reports to the Court (Battiste Supp. Decl. ¶ 12).

Moreover, defendants stated at the hearing that the accessible seating in the Diego Rivera Theatre has been completed for several months and Expert Waters could have inspected it. Defendants also submitted photographs of some of the completed work at the Diego Rivera Theatre (*See* Henry Decl. Exh. H). Among those photographs are pictures of accessible ramps

2

into the Diego Rivera Theatre and accessible bathrooms.  There are also pictures of accessible seating with companion seating, but it is unclear from the pictures where these seats are located. Defendants also say they informed Expert Waters that the Diego Rivera Theatre included accessible seating elements, including in the theatre lobby, to the extent structurally feasible (Battiste Supp. Decl. Exh. B at 7).  As of April 2010, the record indicates that Expert Waters had notice and opportunity to inspect the Diego Rivera Theatre for compliance.

### 2.  VISUAL ARTS BUILDING.

Plaintiffs allege that the Visual Arts Building has not yet been provided with compliant emergency exits.  Defendants assert that they have made the required improvements and have provided compliant emergency exits in the building.  The stipulated judgment requires that each Designated Accessible Facility must have certain fire and life safety protections, including ground-level accessible exits (Dkt. No. 676 at 8 ¶ 9).  Expert Waters states in his declaration that defendants have not yet demonstrated compliance with this requirement with respect to the lower level of the Visual Arts building (Waters Decl. ¶ 8).  In an October 2010 letter to defendants, Expert Waters stated that he has reviewed all barrier removal work completed at the Visual Arts Building and that defendants have provided him with clarification of "how accessible exits are being provided from the Lower Visual Arts Building" (Waters Decl. Exh. O).

Defendants, however, assert that the lower Visual Arts Building does in fact comply with the stipulated judgment.  More specifically, defendants state that they have provided "two accessible ground-level exits from the building by the removal of two interior security doors on an interior door" (Battiste Supp. Decl. ¶ 16).  Defendants also assert that Expert Waters inspected the building and plans as early as Summer 2010 and that only now in Expert Waters' declaration does he assert that the lower Visual Arts Building does not demonstrate compliance (Reply Br. 4). Defendants argue that Expert Waters is raising an objection to the fact that there is no "dead end" exit in his declaration, but his declaration does not mention a dead end exit.  The record shows that Expert Waters received an email on June 24 from defendants' project manager for construction of the Visual Arts Building, stating the proposed approach to the exits and including a drawing of the floor plans of the building (Battiste Decl. Exh. C).

3

### 3. CLOUD HALL.

Plaintiffs allege that 21 classrooms located in Cloud Hall were excluded from the scope of work performed and remain inaccessible. Defendants, on the other hand, assert that all access work necessary to bring Cloud Hall into compliance with the stipulated judgment has been completed. Cloud hall is one of the Designated Accessible Facilities under the stipulated judgment; the stipulated judgment requires at least 30% of Designated Accessible Facilities' special purpose classrooms, general purpose classrooms, and facilities to be made accessible (Dkt. No. 676 at 8).

Plaintiffs allege that defendants have improperly excluded 21 spaces from the scope of work that has been implemented at Cloud Hall (Waters Decl. ¶ 8). These spaces were originally included in the scope of work plans, but defendants notified Expert Waters that the decision was made to exclude them because they were used exclusively for programs in which persons with mobility disabilities were not eligible to participate, such as dental, nursing, and radiology (*id*. at 3). Plaintiffs argue that the ADAAG and California Building Code's accessibility requirements are not intended only to benefit persons using wheelchairs, but rather a range of mobility disabilities, including persons with mobility disabilities who do not use wheelchairs or mobility aids (*ibid*.). Moreover, students with more severe mobility disabilities who are not enrolled in these programs may need to visit these spaces or other people using them (*ibid*.). Expert Waters states in his declaration that these spaces should be made accessible *to the extent feasible* and further notes that modifications to equipment that address reach range issues and/or operational issues need not be implemented if such alterations are not readily achievable or would fundamentally alter the delivery of the programs (*ibid*.). Expert Waters has not inspected the 21 classrooms to determine whether they are accessible to the extent feasible (*See* Waters Decl. Exh. H).

Defendants allege that they had an agreement with Class Counsel with regard to removing some of the unique program spaces in Cloud Hall from the list of Designated Accessible Facilities (Reply Br. 6). Defendants have otherwise completed access work for well over 30% of all regular classrooms in Cloud Hall requiring modification pursuant to the stipulated judgment (Battiste

Supp. Decl. ¶ 20).  They contend, nonetheless, that the District inspected the 21 spaces in issue and determined that accessibility work has been completed and that improvements have been made to the extent feasible (Battiste Supp. Decl ¶ 25).

Additionally, defendants assert that they offered Expert Waters a list of explanations as to why each of the 21 rooms was removed from the list during the compliance period (Reply Br. 6). Modifications affecting the use of equipment utilized in the dental, nursing, and radiology programs would not meet the requirements of the applicable oversight agencies and statutes (Battiste Supp. Decl. ¶¶ 25, 28–29, 31–32, 34, 36, 40–41).  Defendants offer an extensive explanation of why certain rooms were excluded, mainly noting that those rooms are now used as storage space or faculty offices.  Defendants also identify which excluded rooms are, nonetheless, accessible and compliant with the stipulated judgment (*See* Battiste Supp. Decl. ¶¶ 17–41).

*     *     *

The parties are directed to submit sworn declarations answering the following questions by **NOON ON DECEMBER 23, 2010**.

AS TO THE DIEGO RIVERA THEATRE:

1. Is the above description of the problem accurate?
2. Was the number of accessible seats to be installed in the Diego Rivera Theatre actually discussed by the parties?  If so, what was said on this point and precisely when?
3. Was the accessible construction of the new theatre actually discussed by the parties as a substitute for improvements to the Diego Rivera Theatre?  If so, what was said on this point and precisely when?
4. Was a specific blue print or specification illustrating the scope of work to be done in the Diego Rivera Theatre shown to plaintiffs' counsel or Expert Waters before improvements were made?  If so, precisely when?  A copy of the relevant plan that was shown must be appended to the relevant declaration.
5. After improvements began, was plaintiffs' counsel or Expert Waters expressly so advised and invited to examine the work?  If so, exactly

5

when in the timeline of improvements did this occur?

    6. Has Expert Waters ever (before now) inspected the seating area of the Diego Rivera Theatre for compliance with the stipulated judgment?

    7. Has Expert Waters been informed of the status of construction for the new Performing Arts Theatre?

    8. What improvements have actually been completed to the accessible seating in the Diego Rivera Theatre?

    9. How many accessible seats are currently in the Diego Rivera Theatre?

    10. How many accessible seats have yet to be installed in the Diego Rivera Theatre to comply with the stipulated judgment?

AS TO THE VISUAL ARTS BUILDING:

    1. Is the above description of the problem accurate?

    2. Did Expert Waters inspect the fire and life safety conditions of the ground-level exits of the lower Visual Arts Building after receiving notice of the plans on June 24? If so, precisely when?

    3. What exactly, in Expert Waters' opinion, makes the provided exits of the lower Visual Arts Building non-compliant?

    4. Was there an express agreement from Expert Waters or plaintiffs' counsel that the two provided ground-level exits of the lower Visual Arts Building were sufficient to provide the fire and life safety protections required by the stipulated judgment? If not, did Expert Waters or plaintiffs' counsel object to the two provided ground-level accessible exits before removal of barriers, or within a reasonable time after the removal occurred?

AS TO CLOUD HALL:

    1. Is the above description of the problem accurate?

    2. Defendants state that the parties agreed to remove the unique classroom spaces in Cloud Hall from the Designated Accessible Facilities list.

6

3. When did this agreement occur? What specific spaces did the parties agree to remove?

4. When was the final Designated Accessible Facilities list, excluding the 21 classrooms in Cloud Hall, provided to Expert Waters and plaintiffs' counsel?

5. If the parties did not agree on the removal of the above 21 spaces, did Expert Waters or plaintiffs' counsel ever object to their removal from the Designated Accessible Facilities list during the compliance period? When were they on explicit notice of the plan?

6. Despite the dispute regarding these 21 classrooms, have defendants made 30% of "programs, services or activities" located in Cloud Hall accessible in accordance with the stipulated judgment?

7. Has Expert Waters inspected the 21 classrooms for compliance or accessibility issues? If so, precisely when?

8. In what respect does Expert Waters find Cloud Hall to be non-compliant with the stipulated judgment?

By **NOON ON DECEMBER 23, 2010**, counsel are requested to provide specific answers to the foregoing questions in 25 pages or less per side. Please repeat each question before answering it. Evasion will be taken as an admission that the truth would be adverse.

**IT IS SO ORDERED.**

Dated: December 16, 2010.

WILLIAM ALSUP  
UNITED STATES DISTRICT JUDGE

7